UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America | Criminal No. 3:10cr147 (JBA) |
| v. | |
| Ariel Mendez | November 15, 2012 |

**RULING ON DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA**

Defendant Ariel Mendez moves [Doc. # 917] to withdraw his plea of guilty to Count One of the Indictment [Doc. # 15] for conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine. Defendant argues that he suffers from severe cognitive deficits which prohibited him from understanding his plea agreement and from knowingly allocating to the charged conduct, thereby invalidating his plea. (*See* Def.'s Mem. [Doc. # 918] at 5–9.) Mr. Mendez also maintains that his plea colloquy was defective because he was never properly informed of the elements of the charged offense (*see* Def.'s Reply [Doc. # 950] at 2–4), and that his plea was not knowing and voluntary because his attorney was ineffective in advising him regarding the sentencing consequences of his plea (*see* Def.'s Mem. at 9–11). From a review of the record, the Court concludes that Defendant's plea colloquy was invalid because he was not properly informed of the elements of the offense, and therefore Defendant's motion to withdraw his guilty plea will be granted. The Court does not reach the disputed severity of Defendant's cognitive deficits or Defendant's ineffective assistance of counsel argument.

**I.     Background**

On June 30, 2010, Defendant Ariel Mendez was indicted for conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine. (Indict.

[Doc. #15] ¶¶ 1, 4.) The charges in the Indictment arise from allegations that Mr. Mendez brokered a deal between Steve Velez and an unknown seller for one kilogram of cocaine. Pursuant to a plea agreement, on February 1, 2011, Mr. Mendez pleaded guilty to Count One of the Indictment. (Plea Agreement [Doc. # 469] at 1.) Defendant was originally scheduled to be sentenced on May 2, 2011, but on April 5, 2011, he filed a motion to continue sentencing to allow him to complete an outpatient mental health and substance abuse treatment program. (*See* Def.'s Mot. for Extension of Time [Doc. # 567].) The Court granted Defendant's motion and continued sentencing until July 5, 2011. (*See* Order [Doc. # 599].) Defendant again moved to continue sentencing until September 5, 2011 (*see* Def.'s Mot. for Extension of Time [Doc. # 774]), but the Court denied this motion (*see* Order [Doc. # 775]). The day of his sentencing, Mr. Mendez was admitted to MidState Medical Center after a suicide attempt. (*See* Oct. 24, 2011 Report of Dr. Scott at 6.)

Defendant's sentencing was then rescheduled for September 12, 2011. Shortly before Mr. Mendez's sentencing date, however, his attorney moved to withdraw from the case. (See Mot. to Withdraw [Doc. # 844].) The Court granted the motion and appointed new counsel, Defendant's third attorney in this matter. (*See* Order [Doc. # 848].) Defendant's new counsel moved for a psychological evaluation in aid of sentencing and again moved to continue Mr. Mendez's sentencing in order for the evaluation report to be finalized. (*See* Def.'s Mot. for Psychiatric Exam [Doc. # 856]; Def.'s Mot. to Continue [Doc. # 867].) On November 15, 2011, Defendant again moved to continue sentencing and informed the Court that based on Dr. Scott's evaluation, he would likely move to withdraw his guilty plea. (Def.'s Second Mot. to Continue [Doc. # 875].) The Court granted three more continuances, and on March 16, 2012, more than a year after his

change of plea hearing, Defendant moved to withdraw his guilty plea. (*See* Def.'s Mot. to Withdraw Plea of Guilty [Doc. # 917].) The Court held a three-day hearing on the motion to withdraw during which the parties' experts, law enforcement agents, and Defendant's former attorney testified.

II. **Discussion**

Mr. Mendez moves to withdraw his plea on three grounds: (1) that his cognitive deficits rendered his plea unknowing; (2) that his counsel's erroneous advice regarding his potential prison exposure rendered his plea involuntary and unknowing; and (3) that his plea colloquy was defective in that the elements of the charged offense were not accurately stated.[1]

Under Federal Rule of Criminal Procedure 11(d)(2)(B) a defendant may withdraw a plea of guilty if "the defendant can show a fair and just reason for requesting the withdrawal." "A defendant who seeks to withdraw his or her plea bears the burden of showing that there are valid grounds for withdrawal. The fact that a defendant has a change of heart prompted by a reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit a withdrawal of plea." *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004). The Second Circuit has identified several factors that a district court may consider in determining whether a defendant has shown a "fair and just reason" for the withdrawal of his plea:

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the

---

[1] Because the Court finds that the elements of the offense were not properly explained to Defendant at his plea hearing, and that he has therefore shown a fair and just reason why he should be permitted to withdraw his plea, the Court will not address his other arguments.

government would be prejudiced by a withdrawal of the plea. Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea.

*Id.* at 102–03 (internal citations and quotation marks omitted).

*Schmidt* factors (1) and (3) weigh in favor of permitting Defendant to withdraw his plea. Mr. Mendez has asserted his legal innocence by claiming that he did not know that the quantity of drugs involved in the transaction he brokered for Velez was greater than 500 grams. (*See* Mendez Aff., Ex. A to Def.'s Mem., ¶ 15.) Without proof that this quantity was known or reasonably foreseeable to Defendant, he cannot be subjected to the five–year statutory minimum sentence. The Government does not claim prejudice if Mr. Mendez is permitted to withdraw his guilty plea because most of its evidence is based on wiretap recordings and law enforcement witness testimony.

*Schmidt* factor (2) weighs against Defendant, who waited more than a year before moving to withdraw his guilty plea. Mr. Mendez claims in his affidavit that he felt he had made the wrong decision as soon as he pleaded guilty and spoke with both Attorneys Schoenhorn and Resetarits about withdrawing his plea. (*See* Mendez Aff. ¶ 11.) In response, the Government offers a recorded phone conversation between Mr. Mendez and a confidential informant in which Mr. Mendez states that he plans to pretend he is crazy in order to get a lighter sentence and will try to stay out of jail for as long as he can. (*See* Sept. 6, 2012 Report of Dr. Lewis at 13.) Defendant's protracted sentencing hearing scheduling belies his claim that he wanted to withdraw his plea from the start. He moved to continue his sentencing from May 2011 to July 2011 and harmed himself on the eve of sentencing when the Court refused to grant a second continuance. After this incident, new counsel was appointed for Defendant, and his sentencing was delayed from September 2011 until November 2011 when his attorney requested a psychiatric

4

evaluation in aid of sentencing. It was not until November 15, 2011 that defense counsel informed the Court that Defendant would seek to withdraw his guilty plea, but then moved for three additional continuances from November 2011 until March 2012 before filing his motion to withdraw on March 16, 2012. Some of this delay can be explained by the fact that a new attorney was appointed after Defendant's guilty plea, who needed time to familiarize himself with the case. However, the length of the delay militates against permitting Defendant to withdraw his plea. Nevertheless, the first and third *Schmidt* factors weigh in favor of permitting the withdrawal.

Most importantly, Defendant raises a "significant question" as to the validity of his plea. His challenge to the sufficiency of his plea colloquy, complicated by deficiencies in the courtroom recording of the plea hearing before the Magistrate Judge, claims that he was not properly advised of the elements of the offense to which he pleaded guilty in either the plea agreement or during the change of plea hearing, and should thus be permitted to withdraw his plea. Defendant's plea agreement lists the elements of Count One as follows:

1. That a conspiracy, that is an agreement between the defendant and at least one other person, to possess cocaine with the intent to distribute it existed;
2. That the defendant knowingly and willingly participated in the conspiracy; and
3. The amount of the cocaine that was the subject of the conspiracy was 500 grams or more.

(Plea Agreement at 1.) At Mr. Mendez's plea hearing the Government restated these same elements, reading directly from the agreement. (Plea Tr. at 46.) Furthermore, when the Magistrate Judge got to the question about Defendant's knowledge of the quantity of cocaine involved in the transaction he brokered, which constituted his only alleged involvement in the drug conspiracy, his attorney interrupted:

5

The Court: So you knew that Velez was dealing in cocaine?
The Defendant: (Inaudible).
The Court: And how much cocaine was involved?
The Defendant: (Inaudible) saying 500 grams.
The Court: And what do you say?
The Defendant: I can't—I can't really say anything 'cuz it's—I didn't know how much (inaudible) and (inaudible) a friend of mine that was involved with over 500—
The Court: Uh–huh.
The Defendant: (Inaudible).
The Court: So are you saying you didn't know the precise amount of that particular deal?
Mr. Schoenhorn: I don't know if the elements require him to know the exact quantity is the issue, but we don't dispute, and I guess the question that the Court might want to ask is, did he understand that the conspiracy did involve at least 500 grams, for the purposes of his plea, not necessarily the conversation (inaudible). That's all (inaudible).[2]

(*Id.* at 51.) The Magistrate Judge accepted defense counsel's explanation of the elements of the narcotics conspiracy, and continued to question Defendant as follows:

The Court: Right, that's my next question to you, Mr. Mendez. Did you know that these people you were putting together were dealing in coc[aine].
The Defendant: Yes (inaudible).
The Court: You knew they were cocaine dealers?
The Defendant: Yes.
The Court: So when they got the cocaine, what did they do to it?
The Defendant: (Inaudible).
The Court: I'm sorry, I didn't hear you.
The Defendant: They sellin' it.

---

[2] The transcript of Mr. Mendez's change of plea hearing is riddled with inaudible responses to key questions. While the Magistrate Judge undoubtedly would not have continued with the hearing unless Defendant responded to her questions, this Court cannot recreate the record now based on an incomplete transcript. The missing information in this transcript highlights the critical difference between a courtroom electronic recording system and a court reporter, the latter of which more reliably insures a complete and accurate record for review.

| | | |
|---|---|---|
| The Court: | | They were selling cocaine on the street? |
| The Defendant: | | Yes. |
| The Court: | | And did you have reason to believe that they were dealing in at least a half a kilogram? |
| The Defendant: | | Yes. |
| The Court: | | You knew that they were dealing in at least a half a kilogram of cocaine? |
| The Defendant: | | Yes. |

(*Id.* at 52.)

"A guilty plea should be an intelligent choice among the alternative courses of action open to the defendant." *United States v. Adams*, 448 F.3d 492, 497–98 (2d Cir. 2006) (internal quotation marks and citations omitted). "This requires that the defendant is informed of all the crime's elements, otherwise the plea is necessarily invalid." *Id.* at 498 (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). The Second Circuit has recognized that to convict a defendant of conspiracy to distribute or to possess with intent to distribute a controlled substance under 21 U.S.C. § 841, the Government must prove "that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged." *United States v. Santos*, 541 F.3d 63, 71 (2d Cir. 2008); *see also Adams*, 448 F.3d at 499 ("Additionally, we require proof that this drug type and quantity were at least reasonably foreseeable to the co–conspirator defendant."); *United States v. Martinez*, 987 F.2d 920, 926 (2d Cir. 1993) (holding that a defendant could not be held liable for drug sales in which he did not participate unless he knew or should have known about the type and quantity of drugs being sold).

The Government argues that Mr. Mendez's plea was not invalid under Second Circuit law because drug type and quantity need not be reasonably foreseeable to a defendant where that defendant participated directly in the transaction being charged.

7

*See United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010) ("[T]he government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug transaction underlying a conspiracy charge." (emphasis in original).) In *Andino*, the defendant received a package containing drugs, which was addressed directly to him and which he transported to a neighboring building where it was picked up by his co-conspirators. *Id.* The Second Circuit held that the government was only required to show that the defendant "believed that the package contained a controlled substance of one type or another." *Id.*

However, in *Andino*, the Second Circuit was careful to distinguish its previous cases, including *Adams*, where the defendants participated only peripherally in the conspiracy, by recruiting a courier or expressing an interest in conducting a transaction that never actually took place:

> In this respect we note that in *Adams*, *Santos*, and *Martinez*—cases in which we required proof that the drug type and quantity were reasonably foreseeable—the defendants did not directly and personally participate in the underlying drug transactions. *See Adams*, 448 F.3d at 495 (defendant recruited another individual to transport drugs on his behalf); *Santos*, 541 F.3d at 72 (defendant "expressed interest" in taking part in the narcotics transaction, but never had the opportunity to do so); *Martinez*, 987 F.2d at 922 (defendant was a "late-comer" to the drug conspiracy, and thus played no part in many of the transactions for which the government sought to hold him accountable). And in *Abdulle* and *Morgan*—cases in which we did not require proof of reasonable foreseeability as to type and quantity—the defendant's participation was direct and personal. *See Abdulle*, 564 F.3d at 122-23 (defendant was a passenger in the vehicle transporting drugs to a distribution center); *Morgan*, 385 F.3d at 198–204 (defendants personally transported into the United States packages containing ecstasy-like pills).

*Id.* at 47 n.3. In such cases, where a defendant was a peripheral participant, reasonable foreseeability would be required. Furthermore, in *United States v. Culbertson*, 670 F.3d

183 (2d Cir. 2012), the Second Circuit further explained *Andino* as requiring the Government to show scienter where "there is no evidence [the defendant] actually handled [the narcotics] or was involved beyond the recruitment [of a courier.]" *Id.* at 192. In *Culbertson*, the defendant paid his girlfriend to transport drugs from Trinidad to the United States. However, he denied knowledge of the quantity of drugs she was discovered to have been smuggling. The Second Circuit found that based on these facts, a showing of scienter as to the quantity of drugs was required.

In the present case, while Defendant directly brokered the transaction and his intercepted phone calls to Velez speak of quantities,[3] there is no evidence that he actually possessed the drugs or witnessed the exchange of the money for the cocaine, although surveillance showed him to have been present at the prearranged location for the transaction during the time frame in which the buyer and seller arrived. Thus, this case represents an intermediate case where a defendant has done more than recruit a drug courier, but has not been shown to have directly witnessed or participated in the actual transaction. Arguably, Mr. Mendez's conduct is closer to the facts in *Adams* than in *Andino*, because the ability to perceive the drugs in question appears to be a touchstone in distinguishing the *Andino* line of cases from the *Adams* line of cases. Therefore the Court finds that the reasonable foreseeability of drug type and quantity was a necessary element of the charged conspiracy.

---

[3] The recorded calls between Defendant and Velez on which the Government relies contain mentions of a purchase for 33 or 34, without specifying whether the speakers are referring to hundreds or thousands of dollars. On the calls, Velez and Defendant refer to the quantity of cocaine as one, two or three. During the hearing on Defendant's motion to withdraw, the Government also presented testimony from DEA Task Force Officer Frank Bellizzi indicating that this type of code would be used to refer to kilogram–quantity transactions.

Thus, Mr. Mendez's plea agreement did not accurately articulate the elements of Count One, in that it did not state that the quantity of cocaine involved in the conspiracy had to be at least reasonably foreseeable to Mr. Mendez. Furthermore, defense counsel's explanation of the scienter element with respect to quantity served only to further confuse matters in that it drew a distinction between his knowledge of the quantity involved in the transaction he brokered versus his knowledge of the quantity involved in the conspiracy as a whole.[4] After Attorney Schoenhorn's interruption, the Magistrate Judge moved on with the colloquy, and the issue of whether reasonable foreseeability as to quantity was a necessary element was never affirmatively resolved. Thus, Defendant never received a complete and accurate explanation of the elements of the offense to which he was pleading guilty. Without a straightforward explanation of the elements of the conspiracy to which he pleaded guilty, Defendant's guilty plea could not have been knowing, voluntary, and intelligent. As the Supreme Court has recognized: "Where a defendant pleads guilty to a crime without having been informed of the crime's elements, [the defendant lacks 'sufficient awareness of the relevant circumstances and likely consequences' of his decision] and the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

---

[4] Conspiracy law can be conceptually complicated, and even the attorneys in this case exhibited some confusion as to the specific elements of the conspiracy charged in the Indictment. While the parties disagree on the extent of Mr. Mendez's cognitive limitations, each of the experts who evaluated Defendant concluded that he had at least a below–average I.Q., such that the nuances of conspiracy law would likely be less accessible to Defendant. Thus, the Court will not assume that Defendant would have understood that reasonable foreseeability as to quantity was an element of the crime based on the incomplete record of Attorney Schoenhorn's explanation during the colloquy.

The disparity between Defendant's statements during the plea colloquy and the offer of proof by the Government during the change of plea hearing further illustrates that Defendant was not fully aware of the elements of Count One of the Indictment. Defendant was only alleged to have joined the conspiracy when he brokered the Velez transaction and the Government did not proffer any evidence of transactions by Velez subsequent to the deal Mr. Mendez brokered, nor any basis on which Defendant would have known the quantities of prior Velez–conspiracy transactions. Before defense counsel interrupted the colloquy, Defendant, where audible, denies knowledge of the amount of drugs being purchased by Velez in the transaction he brokered.[5] Although Mr. Mendez admitted knowing that Velez trafficked at least half a kilogram of cocaine, Defendant never admitted knowing that the specific transaction he brokered involved more than 500 grams of cocaine. (*See* Plea Tr. at 51 ("I can't—I can't really say anything 'cuz it's—I didn't know how much (inaudible) and (inaudible) a friend of mine that was involved with over 500").) The Magistrate Judge's follow–up question appears to confirm this denial: "So are you saying you didn't know the precise amount of that particular deal?" (*Id.*) At the least, the transcript shows that there was a clear disconnect between

---

[5] Attorney Schoenhorn testified that throughout his dealings with Defendant, Defendant had consistently denied knowing that the transaction he brokered involved one kilogram of cocaine and maintained that he was discussing a 100 gram transaction with Velez. Attorney Schoenhorn testified that he was not certain until the moment of Defendant's plea colloquy whether or not Defendant would admit that he knew the transaction involved more than 500 grams of cocaine. Thus, when Mr. Mendez denied that the Velez transaction involved more than 500 grams of cocaine during the plea colloquy, Attorney Schoenhorn interrupted the proceedings to address the question of reasonable foreseeability. Attorney Schoenhorn testified that he offered this explanation based on the legal ambiguity regarding whether or not scienter was an element of the charged conspiracy, rather than as an attempt to circumvent Defendant's anticipated denial that the Velez transaction involved one kilogram of cocaine, and the Court will take him at his word.

the Government's offer of proof at the change of plea hearing that the brokered deal was for more than 500 grams of cocaine and Defendant's admissions during the Magistrate Judge's redirected canvas as to his knowledge of the relevant drug quantities for the entire conspiracy. This disconnect resulted from the inaccurate statement by the Government of what it had to and would prove. Defendant was not therefore informed of what elements the Government would be required to prove beyond a reasonable doubt, and thus could not have properly weighed the consequences of the decision to waive his rights and plead guilty. As Mr. Mendez's plea colloquy was therefore invalid, a "fair and just reason" exists in light of this deficiency for the Court to permit him to withdraw his plea of guilty.

III. Conclusion

For the reasons discussed above, Defendant's Motion to Withdraw Plea Agreement [Doc. # 917] is GRANTED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 15th day of November, 2012.